UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

    Plaintiff,

v.

MAPLETREE INVESTORS LIMITED
PARTNERSHIP,

    Defendant.
                                      /

Case No. 10-cv-10381

HONORABLE STEPHEN J. MURPHY, III

## OPINION GRANTING PLAINTIFF'S RENEWED MOTION FOR APPOINTMENT OF A RECEIVER AND FOR A PRELIMINARY INJUNCTION (docket no. 12)

This action involves a real estate contract dispute. On January 28, 2010, Plaintiff Federal National Mortgage Association ("Fannie Mae") filed this diversity action against Defendant Mapletree Investors Limited Partnership ("Mapletree"). In its verified complaint, Fannie Mae asserts two counts against Mapletree: 1) "Enforcement of Mortgage (including Assignment of lease and rents) and for Appointment of Receiver;" and 2) "Preliminary Injunction." Presently before the Court is Fannie Mae's Renewed[1] Motion for an appointment of a receiver and for a preliminary injunction. Docket no. 9. Mapletree filed a response to the motion and the Court held a hearing on April 14, 2010. At the hearing, counsel for Mapletree asked the Court to hold off on ruling on the motion because he believed a settlement might be forthcoming, and that an order from the Court might stymie such efforts. The Court agreed not to issue its ruling for one week to allow for any potential

---

[1] Fannie Mae had previously filed a motion seeking identical relief, but the Court struck the motion for failure to comply with E.D. Mich. LR 7.1(a) before filing the motion. Docket no. 5.

settlement activity. It has now been over two weeks since the hearing and the Court has received no indication that the matter has been settled. For the reasons stated below, any further delay in ruling on the motion would harm Fannie Mae's interests. The motion will be granted.

## FACTUAL BACKGROUND

The following facts are undisputed and set forth in Fannie Mae's brief in support of its motion, as well as in its verified complaint. On July 20, 1999, Mapletree entered into a Multifamily Note ("Note"), borrowing approximately $7.7 million from Eichler, Fayne & Associates ("EF&A"). Docket no. 9, Ex. A. Mapletree agreed to repay the amount plus interest, in monthly installments, by August 1, 2009. *Id.* The Note is secured by a Multifamily Mortgage ("Mortgage") on a multifamily real residential real estate project located in Southfield, Michigan known as the Mapletree Apartments ("Mortgaged Property"). Docket no. 9, Ex. B. The Mortgage includes an assignment of rents and leases pursuant to which Mapletree assigned its interests in all rents and leases concerning the Mortgaged Property to EF&A as additional security for the performance of Mapletree's obligations. *Id.* at 7-11. Mapletree then received a license to receive all rents, terminable upon default. On July 30, 1999, EF&A assigned the Note and Mortgage to Fannie Mae. Docket no. 9, Ex. C.

Mapletree's failure to pay any amount required by the Note is an "Event of Default" under both the Note and the Mortgage. *See* docket no. 9, Exs. A at 3 and B at 29. Mapletree is in default of the Note and the Mortgage primarily because it failed to pay the balance of the Note by August 1, 2009, the maturity date. In a letter to Mapletree dated December 7, 2009, Fannie Mae demanded payment of all indebtedness, which as of December 4, 2009, was $6,689,974.21, exclusive of interest and other costs. Docket no.

9, Ex. D. Fannie Mae also advised Mapletree that, according to the terms of the Mortgage, Mapletree's license to collect rents had ended as a result of the default, and that Fannie Mae was entitled to all rents as they became due. *Id.*

Fannie Mae states in its reply brief that it began the process of foreclosure by advertisement, and that a foreclosure sale was set for April 6, 2010. Pl. Rep. Br. at 4. Fannie Mae filed the instant action in "aid of [ ] foreclosure." Compl. ¶ 22. It is concerned that in light of Mapletree's failure to fulfill its obligations under the Note and Mortgage, Mapletree will continue to neglect the Mortgaged Property while the foreclosure is pending and during the six-month redemption period.

In the instant motion, Fannie Mae seeks: 1) a preliminary injunction against Mapletree barring them from transferring, expending, distributing, concealing, destroying, damaging, or otherwise diminishing the Mortgaged Property until a receiver is appointed, or until Fannie Mae receives possession of the property; 2) an order appointing Dover Realty Advisors, LLC as the receiver of the Mortgaged Property during the foreclosure and redemption period to collect rents and perform other necessary obligations respecting the property; and 3) an order requiring all persons who have possession or control of the Mortgaged Property to yield and deliver possession to the receiver. Pl. Mot. at 3.

## DISCUSSION

The Court will address each of Fannie Mae's requests separately.

I. Fannie Mae's Request for Appointment of a Receiver

Fannie Mae asks that the Court appoint a receiver to take control of the Mortgaged Property until it is sold in foreclosure and the six-month redemption period expires. A

district court enjoys broad equitable powers to appoint a receiver[2] over assets disputed in litigation before the court. *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). A receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as required, and to assist the district court in achieving a final, equitable distribution of the assets, if necessary. *Id.* The Court will grant Fannie Mae's request and appoint a receiver.

Although the Sixth Circuit itself has not addressed the issue, the weight of authority suggests that appointment of a receiver in a diversity action is controlled by federal law, not state law. *See Nat'l P'ship Inv. Corp. v. Nat'l Housing Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) (citing cases); *Fed. Nat. Mortgage Ass'n v. Maple Creek Gardens, LLC*, No. 09-14703, 2010 WL 374033, *2 (E.D. Mich. Jan. 25, 2010) (citing *Nat'l P'ship Inv. Corp*); *see also* 12 Charles A. Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice and Procedure § 2983, at 33-35 (2d ed. 1997) ("Whether a federal court should appoint a receiver in a diversity action appears to be a question properly determined on the basis of federal law.");*cf. Fed. Home Loan Mortgage Corp. v. Nazar*, 100 B.R. 555, 557 (Bankr. D. Kan. 1989) ("When federal agencies lend funds pursuant to authority conferred by federal statute, the agencies' rights also derive from and are protected by federal law.").

The appointment of a receiver is not a matter of right, but rather lies in the discretion of the district court and will be exercised only when necessary to protect the plaintiff's interest in property which is the subject of the action. *See Guy v. Citizens Fidelity Bank & Trust Co.*, 429 F.2d 828, 833-34 (6th Cir. 1970); *United States v. Production Plated*

---

[2] "A receiver is an indifferent person between parties, appointed by the court to receive the rents, issue, or profits of land, or other thing in question, pending the suit, where it does not seem reasonable to the court that either party should do it." *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 n. 2 (6th Cir. 2006) (citation omitted).

*Plastics, Inc.*, 61 F.3d 904, *7 (6th Cir. 1995) (table decision). Appointment of a receiver is not an end it itself, but rather a means to reaching some legitimate end. *See Kelleam v. Maryland Cas. Co. of Baltimore*, 312 U.S. 377, 381 (1941). In this case, Fannie Mae is not simply asking the Court to appoint a receiver. Rather, Fannie Mae seeks to enforce the Note and Mortgage, specifically the provisions which entitle Fannie Mae to collect rents and take possession of the Property upon default. Mapletree has refused to remit the monthly rents and transfer possession, so Fannie Mae brought this action.

There is a split of authority over whether the parties' advance consent to the appointment of a receiver in the mortgage documents is dispositive to the issue of appointment, or whether it is simply one factor among the others that a court must consider. *Compare Sterling Sav. Bank v. Citadel Dev. Co., Inc.*, 656 F. Supp. 2d 1248, 1260 (D. Or. 2009) (citing *Watt West Inv. Corp.*, 755 F. Supp. at 292) (consent of the parties is a factor that commands great weight, but is not dispositive), *D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc.*, 550 F.Supp.2d 481, 491 (S.D.N.Y. 2008) (mere existence of contractual provision does not dispose of the court's inquiry), *and Gage v. First Fed. Sav. & Loan Ass'n,* 717 F. Supp. 745, 750 (D. Kan. 1989) ("Appointment of a receiver is not automatic because of a clause in the mortgage agreement; the mortgagee must go through the normal legal channels to obtain a receiver."), *with Britton v. Green*, 325 F.2d 377, 382 (10th Cir. 1963) (holding mortgagee was entitled to appointment of a receiver where parties had agreed in mortgage that mortgagee was entitled to receiver), *and Am. Bank and Trust Co. v. Bond Intern. Ltd.*, No. 06-cv-0317, 2006 WL 2385309, *7 (N.D. Okla. Aug. 17, 2006) ("Appointment of a receiver is appropriate where the parties have contractually agreed to a receivership .... Accordingly, [plaintiff] is entitled to the appointment of a receiver under the bargained-for provisions of the parties' agreements.");

*cf. Nazar*, 100 B.R. at 558 ("In interpreting the receivership provisions of the HUD mortgages, courts have found default alone to warrant appointment of a receiver." (citing cases)). In the absence of clear authority on the issue the Court will err on the side of caution and consider the parties' consent as a strong factor weighing in the plaintiff's favor, but not dispositive of the inquiry.

In addition to the consent of the parties, federal courts contemplating the appointment of a receiver consider a number of other factors, but have found the adequacy of the security and the financial position of the borrower to be the most important ones. *See, e.g.*, *New York Life. Ins. Co. v. Watt West Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991); *Resolution Trust Corp. v. Fountain Circle Assocs. Ltd. P'ship*, 799 F. Supp. 48, 52 (N.D. Ohio 1992); *Maple Creek Gardens, LLC*, 2010 WL 374033, at *3. In addition, courts consider: 1) any fraudulent conduct on defendant's part; 2) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; 3) inadequacy of legal remedies; 4) probability that harm to plaintiff by denial of appointment would outweigh injury to parties opposing appointment; 5) plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; 6) whether plaintiff's interests sought to be protected will in fact be well-served by a receivership. *See Watt West Inv. Corp.*, 755 F. Supp. at 292 (citing 12 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice and Procedure § 2983, at 24-29 (2d ed. 1997)).

Considering the relevant factors, the Court finds that appointment of a receivership during the foreclosure process and redemption period in this case is appropriate, and necessary to protect Fannie Mae's security interest in the Mortgaged Property. First, there is no doubt that Mapletree is in default under the terms of the Note and Mortgage. Under

the Mortgage, Mapletree expressly consented to the appointment of a receiver upon default. Section 3(b) of the Mortgage states, in pertinent part:

> If [Fannie Mae] elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, [Mapletree], by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law.

Docket no. 9, Ex. B. Mapletree's consent to receivership in the event of a default is a strong factor that weighs in favor of appointing a receiver.

The Court next considers the adequacy of the security and the financial position of the borrower, and finds both factors weigh in favor of appointing a receiver. Evidence submitted by Fannie Mae indicates that waste is occurring on the Mortgaged Property as a result of malfeasance and mismanagement of the current property managers.[3] Fannie Mae's loan servicer conducted an inspection of the Mortgaged Property in December 2009 and the inspection revealed substantial damage to the property. The servicer inspected 26 units, 21 of which were without heat, and nine of which had no electric service. Docket no. 16, Ex. B. Six units had water damage due to water pipes freezing and bursting. *Id.* The drywall and insulation in the units were still wet and a smell of moisture was apparent in the units. *Id.* The servicer noted that there could be more units with water damage, but he was unable to inspect all of them as there were, at the time, 137 vacant units. *Id.* The servicer was informed by a maintenance worker for the Mortgaged Property that there was no money to conduct necessary repairs or to restore utilities to those units that had been shut off. *Id.* Photographs of vacant units confirm that waste is occurring. *See id.*

---

[3] At the motion hearing, counsel for Mapletree denied that waste is occurring, but Mapletree has not submitted any evidence to support this claim. As discussed herein, however, there is ample evidence of waste on the Property.

In addition, the loan servicer reported an occupancy rate of 41%, with 147 units vacant. In comparison, similar apartment facilities in the immediate geographical area of the Property have occupancy rates of 90-98%. Docket no. 16, Ex. C. The overall market is 91-94% occupied. *Id.* There is also evidence that the current property managers have refused to inform prospective tenants of rental rates, and have even referred prospective tenants to other properties owned and managed by Mapletree, thereby further damaging Fannie Mae's interests in the Property. *Id.* From this uncontroverted evidence, it is clear that there is a danger of the Property not being maintained and diminishing in value, all to Fannie Mae's further detriment.

Mapletree's failures to surrender to Fannie Mae the monthly rents and to pay its monthly installments under the Note demonstrate that Mapletree itself is in a poor financial condition. There is also evidence that the Mapletree has been unable to make utility payments, which has caused the heat in certain units to be shut off. King Aff. ¶ 7, docket no. 16, Ex. D. Mapletree has also stated that it has approximately $270,000 in outstanding unpaid payables as of November 2009 in connection with the Mortgaged Property. *Id.* ¶ 9. There has been no rebuttal of this evidence by Mapletree. This evidence demonstrates what Mapletree's financial condition is: poor. Accordingly, the two most important factors -- adequacy of the security and financial condition of the borrower -- both weigh in favor of appointing a receiver.

Consideration of the other factors also persuades the Court that a receiver is necessary in this instance. Although Fannie Mae does not allege fraudulent conduct on the part of Mapletree, the Court finds Maptletree's referral of prospective tenants to its other properties deceptive and substantially threatening to Fannie Mae's interest in the Property. Additionally, the Court finds the Property in imminent danger of being further diminished

in value through the waste currently occurring by Mapletree's failure to maintain numerous unoccupied and damaged units. The Court also finds that not appointing a receiver would cause extreme harm to Fannie Mae, but would not harm Mapletree in the slightest. Mapletree agreed to not contest receivership appointment and there is little harm in enforcing the terms of the parties' bargain. *See Watt West Inv. Corp.*, 755 F. Supp. at 293; *Maple Creek Gardens, LLC*, 2010 WL 374033, *3. Fannie Mae has also made a very strong showing that it will succeed on the merits. It brings a very straight-forward claim of breach of the loan and mortgage agreements and seeks to enforce those agreements by an order requiring Mapletree to turn over possession of the property and all rents collected. Mapletree admits it is default of the agreements. Answer ¶ 14 ("[I]t is admitted that such [monthly installment] payments had not been made."). Mapletree is clearly in default, which entitles Fannie Mae to the relief they seek, including a receiver.

Additionally, Mapletree's continued neglect of the Mortgaged Property, allowing numerous units to remain vacant without utility service and failing to repair broken pipes inside the units, while at the same time referring potential tenants to neighboring properties demonstrates that absent a receiver to manage the Property during the foreclosure process, Fannie Mae will likely be irreparably injured. It is highly unlikely that, given Mapletree's continued failure to pay thus far, Mapletree will ever repay the loaned amount. Accordingly, Fannie Mae's only chance at recovering the loan amount is by selling the Property in foreclosure. To increase Fannie Mae's chances of recovering the balance on the Note, it is necessary that the Property be maintained and improved in order to increase its value before foreclosure and expiration of the redemption period. A receiver is imperative for maintaining and improving the property. A receiver will also ensure that Fannie Mae receives some of its monthly rents until the property is sold.

The Court finds that the substantial majority of the relevant factors weigh in favor of appointing a receiver. The Court will appoint Dover Realty Advisors, LLC as receiver. From the Court's review of Dover's promotional materials attached to the preliminary injunction motion, Dover is qualified to manage and maintain the Mortgaged Property until the property can be sold and the redemption period expires.

II.     Fannie Mae's request for a Preliminary Injunction

Fannie Mae also requests that the Court enjoin Mapletree from transferring or destroying the Mortgaged Property and its assets including monthly rents, and order the current Mapletree management to deliver possession to the receiver once appointed. The Court will grant this request.

As with appointment of a receiver, whether to issue a preliminary injunction lies within the sound discretion of the district court. *Golden v. Kelsey-Hayes*, 73 F.3d 648, 653 (6th Cir. 1996). "The purpose of a preliminary injunction is merely to preserve the status quo until a trial on the merits can be held." *Certified Restoration Dry Cleaning Network, L.L.C., v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). When considering a motion for a preliminary injunction, a district court must balance four factors: 1) whether the movant has a strong likelihood of succeeding on the merits; 2) whether the movant will suffer irreparable injury absent the injunction; 3) whether issuing the injunction will cause substantial harm to others; and 4) whether the public interest will be furthered by the issuance of the injunction. *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). These four considerations are factors to be balanced, not prerequisites to be met. *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003). *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453,

459 (6th Cir. 1997). A district court need not make specific findings on each factor if fewer factors are dispositive. *Id.*

The Court has already noted above, in the receivership appointment analysis, that Fannie Mae has demonstrated that it will succeed on the merits of its claim for enforcement of the loan documents. Mapletree is in default and has not complied with the requirements of the Mortgage and Note in the event of default. Accordingly, the first factor weighs heavily in Fannie Mae's favor. Mapletree's failure to address the first factor in any way in its brief demonstrates that it tacitly agrees with the Court's assessment of this factor. *See generally* Def. Resp. Br. at 3. Given the strength of Fannie Mae's claim of breach of the loan agreements, the Court could grant injunctive relief based on this factor alone. *See, e.g., McPherson*, 119 F.3d at 459 ("[B]ecause we conclude that [plaintiff] has no possibility of success on the merits of his [ ] claims, we are constrained to overrule the district court's [issuance of a preliminary injunction].").

Nevertheless, the Court also finds that, despite Mapletree's claim to the contrary, the irreparable injury recounted above is likely to continue absent a preliminary injunction. Given Mapletree's past failure to remit collected monthly rents to Fannie Mae upon default as required, and failure to pay its monthly payments on the Note by the maturity date, the Court has little confidence Mapletree will begin honoring the terms of the agreements in the future. Mapletree's failure to do so irreparably injures Fannie Mae's rights under the mortgage documents. An injunction will prevent Mapletree from further neglecting the Property itself, or from transferring or concealing any rents or assets, until the receiver takes possession of the Mortgaged Property. Accordingly, the second factor weighs in favor of an injunction.

The third factor alsos weigh in favor of Fannie Mae. Issuing an injunction will not cause any harm to Mapletree. Mapletree states that it is in discussions that could lead to restoration of its relationship with Fannie Mae or that could lead to alternative financing that could resolve its current difficulties. An injunction, Mapletree contends, could have a chilling impact on these efforts, which would work a sever hardship to it. By contrast, according to Mapletree, Fannie Mae would not suffer any hardship because Mapletree is "actively, competently, and responsibly" managing the Property. Def. Resp. Br. at 3. The Court finds it incongruous that the best way to restore Mapletree's relationship with Fannie is to fail to honor its agreements thus far. The Court finds any hardship to Mapletree is of Mapletree's own making. In any event, Fannie Mae denies that any restorative discussions are currently taking place and states that Mapletree in fact has already declined to enter into a proposed modification/extension of the underlying debt. King Aff. ¶¶ 11-12.

The fourth factor also weighs in favor of issuing a preliminary injunction because the public interest is served by compelling parties to honor their agreements. *Cf. Certified Restoration Dry Cleaning Network, L.L.C.*, 511 F.3d at 551. It is also very likely that requiring Mapletree to transfer possession to a receiver will benefit the current tenants by allowing the receiver to properly manage the property and prevent increasing vacancy. Prospective tenants will also benefit from a better managed apartment complex by increasing competition for housing in the Southfield apartment market.

In sum, all four factors weigh in favor of granting a preliminary injunction and the Court will issue one.

Counsel for Fannie Mae indicated that in the event the Court grants the requested relief, counsel would file a stipulation signed by all parties to have the case administratively closed until the expiration of the redemption period. The Court does not see the need for

a separate stipulation and will close the case administratively at this point. Should any party wish to reopen the case, it may file a "Notice of Reopening," whereupon the case will be reopened and returned to the Court's active docket. Once the redemption period has expired, Fannie Mae should file a stipulation of dismissal signed by all parties pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).

Plaintiff's renewed motion for appointment of a receiver and for a preliminary injunction (docket no. 16) is **GRANTED**. An Order appointing a receiver and entering a preliminary injunction shall issue separately.

This case will be closed for administrative purposes.

    s/Stephen J. Murphy, III
    STEPHEN J. MURPHY, III
    United States District Judge

Dated: April 30, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 30, 2010, by electronic and/or ordinary mail.

    s/Alissa Greer
    Case Manager